UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES ALEXANDER LOGAN,

    Plaintiff,

v.                      Case No.: 3:07-cv-1156-J-32JRK

CAPT. A.P. SMITH, et al.,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants **Smith**, **Riley**, **Silcox**, **Humphrey**, **Godwin**, **Fowler**, **Parrish**, **Selyutin**, **Mathews**, **Williams**, **Bonsall**, **Kennington**, and **Lingis**, through undersigned counsel, submit this Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and request summary judgment be granted in their favor. Defendants request Plaintiff be given a "strike" under 28 U.S.C. § 1915(e)(2)(B) and sanctions recommended under 944.279, Fla. Stat., for making a false statement to this Court. Additionally, this Court should grant any other relief the Court deems just and proper to reprimand Plaintiff for his false allegations.

## PRELIMINARY STATEMENT

Plaintiff Palmer is an inmate in the custody of the Florida Department of Corrections ("FDOC"). Plaintiff has filed an amended civil rights complaint

alleging violations of the Eighth Amendment of the U.S. Constitution. (Doc. 27 at 9) He also asserts violations of state assault and battery torts. (Id. and Id. at 15)

## PLAINTIFF'S ALLEGATIONS AND RELIEF REQUESTED

Plaintiff alleges the following. On August 30, 2007 at approximately 1:20 p.m. Plaintiff started to light pieces of toilet paper on fire and throwing some of them in the hallway. (Doc. 27 at 9-10) Plaintiff then attempted to hang himself.[1] (Id. at 10) Immediately thereafter, Defendant Lingis sprayed a fire extinguisher into Plaintiff's cell, though Plaintiff states nothing was on fire in his cell. (Id.)

At 1:34 a.m., the cell extraction team approached Plaintiff's cell. (Id.) The team consisted of Officers Kennington, Williams, Riley, Silcox, and Humphreys. (Id.) The team entered the cell and threw Plaintiff on the floor and put handcuffs on Plaintiff. (Id.) The officers on the team punched Plaintiff in the face, head, and kicked him in the side and back. (Id.) Defendants Smith and Bonsall stood by and watched as this took place. (Id.)

Plaintiff was taken to medical where he was again assaulted by unnamed officers. (Doc. 27 at 11) This assault took place in view of medical personnel and named Defendants Parrish and Selyutin. (Id.)

---

[1] There is simply no evidence whatsoever that Plaintiff attempted to hang himself. Even assuming, *arguendo*, that the allegation is true, the cell extraction was all the more necessary as Plaintiff was a threat to his own safety.

2

Plaintiff asserts the following injuries: extreme swelling to the left and right side of his face, extreme pain in his ribcage, and extreme lower back pain. (Id.)

Plaintiff is suing the Defendants in their individual capacity. (Doc. 27 at 1, 16) Plaintiff seeks a declaratory judgment stating that Defendants actions violated the Constitution and constituted assault and battery under state law. (Doc. 27 at 18) Plaintiff seeks $100,000 from each Defendant for physical injuries and emotional injuries. (Doc. 27 at 18) Plaintiff also seeks $150,000 from Defendants jointly and severally for physical injuries. (Id.) Plaintiff seeks Defendants to pay his medical costs, court fees, and attorney fees. (Id.)

Lastly Plaintiff seeks federal and state criminal indictments against Defendants. (Id.)

## STATEMENT OF MATERIAL AND GENUINE FACTS

1. Plaintiff has a history of lighting fires in his cell. (Exh's A and B) Plaintiff also has a history of violent and aggressive behavior, including disciplinary reports for unarmed assault, participating in a disturbance, spoken threats, battery of a correctional officer, and assault on a correctional officer. (Exh. A)

2. At approximately 1:25 PM, on August 30, 2007, Captain Smith responded to a fire on B-Wing, cell B1-327S, which housed Plaintiff. The fire was

extinguished by staff. After the fire was extinguished, Captain A.P. Smith gave several verbal orders for Plaintiff to submit to handcuffing procedures to no avail. (Exh's C, D, E, F, G)

3. Captain Smith advised Sergeant Lingis to retrieve a fire extinguisher and respond to cell B1-327S in case Inmate Logan attempted to re-ignite the fire. Sergeant Lingis retrieved the ABC fire extinguisher from B-Wing quarterdeck and responded to cell B1-327S. At approximately 1:30 PM Lieutenant R. Bonsall and Sergeant Lingis observed inmate Logan attempt to re-ignite the fire in his cell by piling up miscellaneous paper in the middle of his cell and lighting it with a lighter.[2] Sergeant Lingis ordered inmate Logan to cease his behavior at which time he refused. At this time it became necessary for Sergeant Lingis to extinguish the second fire in cell B1-327S. (Exh's C, D, E, F)

4. The warden was notified of the situation with Plaintiff and approved a cell extraction. (Exh. C: 13; Exh. D)

5. In order to prevent Plaintiff from restarting the fire or injuring himself, Captain Smith ordered a cell extraction team consisting of Sergeant Riley as the number one man, Sergeant D. Kennington as the number two man, Officer

---

[2] A lighter was recovered from the cell by Sergeant Lingis and forwarded to Inspector Whitehead. (Exh. C: 14)

R. Humphreys as the number three man, Sergeant Daren Williams as the number four man, and Officer J. Silcox as the number five man. At this time the handheld camera was not available due to ongoing situations in other areas. (Exh's C, D, G, H)

6. When the extraction team entered the cell, Plaintiff was under his bunk and refused orders to come out. Sergeant Riley grasped Plaintiff's right leg with both of his hands and with the assistance of other cell extraction team members, pulled Plaintiff out from under the bunk. (Exh's C, D, G, H, I)

7. After restraints were applied, Sergeant Kennington, Officer Humphreys, and Officer Silcox lifted Plaintiff to his feet. Officer Humphreys and Sergeant Kennington escorted inmate Logan to medical where he received a post use of force physical by T. Parrish, LPN. Once inmate Logan was in the clinic, no further force was utilized. (Exh's C, D, G, H, I) Defendant Fowler witnessed Plaintiff being escorted out of B-Wing. (Exh. J)

8. Officer J. Dover responded to the clinic with the camera from the Colonel's area and began videotaping inmate Logan at this time. (Exh. C: 15; See also Hand Held Video)

9. Plaintiff was examined by medical personnel and no injuries were noted. (Exh's C, K, L, M) A complete and thorough exam was conducted.

5

(Exh's C, K, L, M)  Plaintiff is being untruthful with this Court when he states in his complaint that medical personnel failed to properly examine him and "fail[ed] to remove the (spit shield) from over my whole head and face to examining [sic] said injuries but wrote in my medical record (no injuries) sustained." (compare Doc. 27 at 11 with Exh. L and Hand Held Video, disk 1 of 2, at 6:05-6:55)  Nurse Parrish lifted the spit shield from Plaintiff's face and examined his face.  Nurse Parrish also removed the spit shield and examined Plaintiff's entire head.  (Exh. L)

10.   Plaintiff was also briefly examined by Dr. Selyutin.  Dr. Selyutin saw nothing medically wrong with Plaintiff.  (Exh. K)  No force was used against Plaintiff while in the presence of Defendants Parrish or Selyutin.  (Exh's K, L)

11.   Plaintiff was placed in a holding cell in the clinic until cell B1-327S was cleaned for use.  Once cell B1-327S was cleaned and cleared for use, inmate Logan was escorted to the cell where the leg irons were removed by Sergeant Kennington.  The officers exited the cell, secured the cell door, and Sergeant Kennington removed the handcuffs.  The food flap was secured by Officer Silcox. (Exh's C, D, G)

12.   Due to Plaintiff's refusal to submit to handcuffs upon direct order from Captain Smith, Plaintiff was written a disciplinary report ("DR") for

Disobeying Order. (Exh. N) Plaintiff refused to participate in any way during the investigation into the DR. (Id.)

13. Plaintiff received no injuries from the use of force. (Exh's C, K, L, M) In fact, Plaintiff was seen by medical personnel numerous times after the incident under review and no injury was ever found to exist that was a result of the use of force. (Exh. M: 3-4, 5, 7-8, 9-10, 11-12, 20-21, 23, 24)[3]

14. None of the numerous wings cameras show excessive force being used on Plaintiff. (See Fixed Wing Video)

15. The Inspector General's Office investigated Plaintiff's allegations of excessive force and found them to be unsubstantiated. (Exh. O)

16. Defendant B. Humphrey was not involved in the cell extraction and was not present at Florida State Prison when the alleged illegal use of force took place. (Exh. P)

## MEMORANDUM OF LAW

### I. Summary judgment standard.

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is

---

[3] Although a nurse noted that Plaintiff had a "possible hematoma to the right side of head" on August 31, 2007, when he was seen by Physician's Assistant Matthews that same day, the PA found "no hematomas" present. (Exh. M: 1, 20-21)

7

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 323.  Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists.  Id. at 324.

Applicable substantive law identifies those facts that are "material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are "implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  "[F]acts must be viewed in the light most favorable to the

nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U. S. 372, 380 (2007). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252; see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . ."). In other words, summary judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.[4]

## II. Plaintiff has not established an Eighth Amendment violation.

The standard applied to Eighth Amendment claims has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). Force is deemed legitimate where it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause

---

[4] As recently stated by the Supreme Court, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

harm.[5] Cockrell v. Sparks, 510 F.3d 1307, 1311-12 (11th Cir. 2007) (citing Whitley, 475 U.S. at 320-21). The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will *support a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added). That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. Campbell v. Sikes, 169 F.3d 1353, 1376 (11th Cir. 1999) (citation omitted).

In addition to the "unnecessary and wanton infliction of pain" standard, referred to as the "subjective component" of the excessive force standard, there exists an "objective component" that determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. See Wilson v. Seiter, 501 U.S. 294, 303 (1991). In situations involving allegations of excessive

---

[5] The absence of serious injury suffered by an inmate, while not dispositive, is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).

10

force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." Hudson, 503 U.S. at 9.  However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (quotation omitted).  Not every malevolent touch by a prison guard gives rise to a federal cause of action. Id.

In order to state a violation of the Eighth Amendment, a plaintiff must establish that force was applied maliciously and sadistically to cause harm. The Eleventh Circuit has recognized the following five factors as being relevant to this inquiry: (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

The evidence shows that the use of force on Plaintiff was not a violation of the Eighth Amendment, but a necessary action 1) to stop Plaintiff from harming himself and others by starting a fire and 2) to bring Plaintiff, an unruly, recalcitrant, and violent prisoner, under control. (Exh's A-I, N, O) Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (stating that prison guards may use

11

force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990) ("We have held that when a prisoner created a disturbance by failing to follow a prison guard's instructions and shouting obscenities, it was not unreasonable for the guard to grab the prisoner by the throat and shove him against the prison bars."); Hudson v. McMillian, 503 U.S. 1, 6 (1992) (noting that prison administrators should be accorded wide-ranging deference in the execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security) (quotations and citations omitted).  Further, Defendants believed force was necessary and used as little force as necessary to cease Plaintiff's dangerous actions and to bring him under control. (Exh. C: 1-2, 4-8, 13, 18, 19; Exh. D: ¶ 4; Exh. E; Exh. F; Exh. G; Exh. H: ¶ 2; Exh. I: ¶ 2; Exh. O )  Whitley, 475 U.S. at 321("But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.")  That Defendants used as little force as was necessary is buttressed by the fact that Plaintiff received no injury from the use of force. (Exh C: 11-12; Exh. K; Exh. L; Exh. M: 3-4, 5, 7-8, 9-10, 11-12, 20-21, 23, 24)  Hudson, 503 U.S. at 7 (noting that the extent of

12

injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation); Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) ("The extent of injury may also provide some indication of the amount of force applied."). Also, Plaintiff was immediately taken to medical where he was given a full examination by medical personnel. (Exh C: 11-12; Exh. K; Exh. L) Cockrell, 510 F.3d at 1312 (noting that the action taken by the jail guards of immediately summoning medical assistance for the inmate tempered the severity of the forceful response and makes it less likely that either of the guards were acting sadistically instead of in good faith).

Additionally, as the hand held video shows, Plaintiff is being untruthful to this court about the medical care he received (compare Doc. 27 at 11 with Exh. L and Hand Held Video, disk 1 of 2, at 6:05-6:55) Plaintiff was thoroughly and properly examined and suffered no injury. (Exh's K, L)

The evidence shows Defendants acted without malice and in an effort to restore order and discipline. Due to Plaintiff's admitted lighting of a fire in his cell (Doc. 27 at 10), Plaintiff's refusal to cease his actions, and Plaintiff's refusal to cuff up so that he could be safely removed from his cell in an orderly and controlled manner, action had to be taken to bring Plaintiff under control, to preserve his safety, and to preserve the wellbeing of those around him. Brown v.

Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (stating whether prison guard's application of force to inmate is actionable turns on whether that force was applied in good faith effort to maintain or restore discipline, and neither judge nor jury is free to substitute its own judgment for that of prison officials). Because the evidence shows that *de minimis* force was used, and there is no evidence that force was applied maliciously and sadistically to cause harm, Defendants should be granted summary judgment. Vicks v. Knight, No. 09-15012, 2010 WL 2079696 (11th Cir. May 26, 2010) (Exh. Q).

### III.   Plaintiff cannot recover compensatory or punitive damages.

Any request by Plaintiff for compensatory or punitive damages is precluded by 42 U.S.C. § 1997e(e) if he cannot demonstrate physical injury. 42 U.S.C. § 1997e(e), as enacted by the Prison Litigation Reform Act, provides "no action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." The evidence shows that Plaintiff did not sustain a physical injury. (Exh C: 11-12; Exh. K; Exh. L; Exh. M: 3-4, 5, 7-8, 9-10, 11-12, 20-21, 23, 24)   As such, Plaintiff's request for compensatory and punitive damages is improper. Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims for compensatory and punitive damages without a prior showing of physical injury).

**IV.     Defendants are entitled to qualified immunity.**

Qualified immunity shields public officials in their individual capacities from some lawsuits against them arising from torts committed while they are performing a discretionary duty. Goebert v. Lee County, 510 F.3d 1312, 1329 (11th Cir. 2007). The doctrine does not, however, shield officials who violate an individual's "clearly established" constitutional rights. See, e.g., Hope v. Pelzer, 536 U.S. 730, 743, (2002) (denying qualified immunity because prison guards had "fair warning" that handcuffing an inmate to a hitching post for hours in the Alabama sun violated the Eighth Amendment's proscription of cruel and unusual punishment); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002) (denying qualified immunity because no reasonable officer could "possibly have believed that he . . . had the lawful authority to take [an arrestee] to the back of her car and slam her head against the trunk after she was arrested, handcuffed, and completely secured").

To determine whether a defendant is entitled to immunity, courts employ the Supreme Court's two-step inquiry in Saucier v. Katz, 533 U.S. 194, (2001). One question is whether in "light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201.

15

The other question[6] to be considered is whether, at the time the violation occurred, every objectively reasonable person officer would have realized the acts violated already clearly established federal law. Id. at 201-02. In other words, to determine whether the officers' conduct was "reasonable" under the circumstances, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to the underlying intent or motivation . . . It must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citations omitted).

Where, as here, qualified immunity is sought after the discovery period has ended, the reviewing court is required to eliminate all issues of fact in the light most favorable to the plaintiff. Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005). "With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute." Id. However, a court is not required to assume as fact any allegation which is unsupported. See Baltimore v. City of Albany, Ga., 183 Fed. App'x 891, 896-97 (11th Cir. 2006).

---

[6] Courts are no longer required to approach these questions in any particular order. Pearson v. Callahan, 129 S.Ct. 808 (2009). If either question is answered in favor of the defendant, the inquiry ends.

(Exh. R); Michalik v. Hermann, 422 F.3d 252 (5th Cir. 2005) (stating that the plaintiff bears the burden of negating a qualified immunity defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct); Illsley v. Attorney General of U.S., No. 85-5842, 1986 WL 18118 (6th Cir. Oct. 8, 1986) (stating that while unsupported allegation that the defendants acted with malice and in bad faith may serve to state a claim for relief, it will not overcome a legitimate claim of qualified immunity buttressed by documents reflecting an apparent good faith effort to resolve plaintiff's concerns) (Exh. S); Harris v. Dugger, 757 F.Supp. 1359 (S.D. Fla. 1991) (stating that prisoner's unsupported allegation of noncompliance with administrative rule was insufficient to demonstrate a genuine issue of material fact; thus, prison officials who submitted prison records and affidavits alleging compliance with rule were entitled to summary judgment on their claim of qualified immunity). Cf. Goree v. City of Atlanta, Georgia, 276 Fed. App'x 919 (11th Cir. 2008) (stating that inmate's unsupported allegations of a conspiracy to frame him for an altercation is insufficient to pierce the protections of official immunity on state law claims) (Exh. T).

As demonstrated in Section II above, the evidence shows that Defendants did not take any action in violation of or known to be in violation of Plaintiff's

17

constitutional rights. The evidence shows that the amount of force used by Defendants was reasonable under the circumstances. Defendants were merely seeking to bring a violent and recalcitrant inmate under control and cease the inmate's dangerous action of lighting fires which were a threat to the inmate and to all those around him. Accordingly, Defendants are entitled to qualified immunity.

## V.     State law claims.

In Florida, "a battery consists of the intentional infliction of a harmful or offensive contact upon the person of another." Sullivan v. Atl. Fed. Sav. & Loan Ass'n, 454 So. 2d 52, 54 (Fla. 4th DCA 1984); see also Paul v. Holbrook, 696 So. 2d 1311, 1312 (Fla. 5th DCA 1997). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). The evidence shows that the amount of force used by Defendants was reasonable under the circumstances. Defendants were merely seeking to bring a violent and recalcitrant inmate under control and cease the inmate's dangerous actions which were a threat to the inmate and all those around him.

Defendants are immune from suit under Florida law for acts occurring during the course and scope of their employment. § 768.28(9)(a), Fla. Stat. As laid out above in Section II, the evidence shows Defendants acted without malice

and in an effort to restore order and discipline. Due to Plaintiff's admitted lighting of a fire in his cell, Plaintiff's refusal to cease his actions, and Plaintiff's refusal to cuff up so that he could be safely removed from his cell in an orderly and controlled manner, action had to be taken to bring Plaintiff under control, to preserve his safety, and to preserve the wellbeing of those around him. §§ 776.012, 776.031, 776.051, Fla. Stat. Accordingly, Defendants should be granted summary judgment as to the state law claims.

## CONCLUSION

Defendants request that summary judgment be granted in their favor; Plaintiff's claim for compensatory and punitive damages be dismissed; Plaintiff be given a "strike" under 28 U.S.C. § 1915(e)(2)(B) for filing a frivolous and malicious claim; and any other relief the Court deems just and proper.[7]

Respectfully submitted,

**BILL MCCOLLUM
ATTORNEY GENERAL**

/s/ Lance Eric Neff
LANCE ERIC NEFF
Assistant Attorney General

---

[7] As Plaintiff is a life-sentenced inmate and recommending sanctions under 944.279 is not a proper deterrent for lying to this Court, Plaintiff should be ordered to write the following 1,000 times: "In the future, I will not make untruthful statements to this Court or any other court in which I litigate." See, e.g., Brown v. Kent, Case No, 3:09cv88/WS/MD (N.D.Fla Jun. 30, 2010) (Exh. U).

Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to: James Logan, DC# Y00683, Union C.I., 7819 N.W. 228th Street, Raiford, FL 32026-4000 on this 4th day of November, 2010.

/s/ Lance Eric Neff
LANCE ERIC NEFF